UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SCOTT JOHNSON,

        Plaintiff,

v.

SHRI JAI RANCHHODRAI, INC.,

        Defendant.

Case No.17-cv-06482-VKD

**ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE; REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 12

      In this action, Mr. Johnson asserts claims under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181, *et seq.* and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51-53. He seeks injunctive relief, as well as statutory damages, attorney's fees and costs.

      SJR failed to answer the complaint or to otherwise appear in this matter. At Mr. Johnson's request, the Clerk of the Court entered SJR's default on January 25, 2018. Dkt. No. 10.

      Mr. Johnson now moves for default judgment. Although the docket indicates that Mr. Johnson served his motion papers by mailing them to SJR's registered agent for service of process (Dkt. No. 12-14), SJR has not opposed or otherwise responded to the motion, and briefing on the matter is closed. Civ. L.R. 7-3(a). Pursuant to this Court's order requesting clarification on certain matters, Mr. Johnson submitted a supplemental brief on July 6, 2018. Dkt. No. 17.

      Mr. Johnson has consented to proceed before a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. SJR, however, has never appeared and is in default. Accordingly, this Court directs the Clerk of the Court to reassign this action to a district judge, with the following report and

recommendation that Mr. Johnson's motion for default judgment be granted.[1]

## REPORT AND RECOMMENDATION

### I.    BACKGROUND

According to his complaint, plaintiff Scott Johnson is a level C-5 quadriplegic who cannot walk and has significant manual dexterity impairments. He says he uses a wheelchair for mobility and has a specially equipped van. Dkt. 1, Complaint ¶ 1; Dkt. 12-5, Declaration of Scott Johnson ("Johnson Decl.") ¶ 2. Defendant Shri Jai Ranchhodrai, Inc. ("SJR") is the alleged owner of the Bella Vista Inn ("Inn") in Santa Clara, California and of the parcel of real property where the Inn is located. Complaint ¶¶ 3-13.

Mr. Johnson alleges that barriers at the Inn prevented him from enjoying full and equal access at the facility. Specifically, the complaint alleges that Mr. Johnson visited the Inn on a number of occasions, including in September 2016, October 2016, November 2016, December 2016 and January 2017. Complaint ¶ 18; Johnson Decl. ¶ 3. During each of those visits, he says he encountered three types of access barriers:

First, Mr. Johnson claims that while the Inn's patrons can book standard guestrooms with two beds, the Inn's designated accessible guestrooms are single-occupancy only. Mr. Johnson says he needs two beds: one for himself and one for his aide. During his November 2016 and December 2016 visits to the Inn, Mr. Johnson says that he reserved a standard two-bed guestroom. However, during his December 2016 visit, Mr. Johnson claims he was not able to get to his assigned room because there was no elevator and no accessible path of travel leading to the upper floors. Complaint ¶¶ 20-23; Johnson Decl. ¶ 4.

Next, Mr. Johnson claims that he encountered a barrier at the entrance to the Inn. He alleges that the door's hardware is "a pull bar style handle that requires tight grasping to operate." Complaint ¶¶ 25-27; Johnson Decl. ¶ 4.

Finally, Mr. Johnson claims that the Inn's transaction counter is 42-inches high and that there was no lowered, 36-inch portion of the transaction counter for use by persons in wheelchairs.

---

[1] The matter is deemed suitable for determination without oral argument. Civ. L.R. 7-1(b).

Complaint ¶¶ 28-32; Johnson Decl. ¶ 4.

According to Mr. Johnson, the barriers he encountered "caused him difficulty and frustration." Complaint ¶ 34. While he says would like to return and patronize the Inn, Mr. Johnson claims that he "will be deterred from visiting until the defendants cure the violations." *Id.* ¶ 42; Johnson Decl. ¶¶ 6-7.

## II.     LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action, who is neither a minor nor an incompetent person, and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a).

After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, the court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

## III.     DISCUSSION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

### A.     Jurisdiction

Federal question jurisdiction is based on Mr. Johnson's ADA claim for relief. 28 U.S.C.

§ 1331. The Court has supplemental jurisdiction over his California Unruh Act claim pursuant to 28 U.S.C. § 1367.

This Court is also satisfied that personal jurisdiction exists over SJR. Mr. Johnson's complaint and public records submitted with the present motion indicate that SJR is a California corporation that owns the Inn and the real property in Santa Clara, California on which the Inn is located. Complaint ¶¶ 2-13; Dkt. 12-4, Declaration of Dennis Price ("Price Decl."), ¶ 3; Dkt. 12-8. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.") (internal quotations and citation omitted) (alteration in original); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home.").

### B. Service of Process

Pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, a domestic corporation may be served:

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1)(B). Alternatively, Rule 4 provides that service on a corporation may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

California Code of Civil Procedure section 416.10 provides that a corporation may be served by "delivering a copy of the summons and the complaint . . . [t]o the person designated as agent for service of process" or "[t]o the president, chief executive officer, or other head of a corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager or person authorized by the corporation to receive service of process." Cal. Code Civ. Proc. § 416.10(a), (b). In lieu of personal delivery,

4

California law permits substituted service on a person to be served under section 416.10 by (1) "leaving a copy of the summons and the complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof" and (2) "thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Code Civ. Proc. § 415.20(a). However, before resorting to substituted service, "a plaintiff must first make reasonably diligent (i.e., two or three) attempts at personal service." *Shaw v. Five M, LLC*, No. 16-cv-03955-BLF, 2017 WL 747465, at *2 (N.D. Cal., Feb. 27, 2017) (citing *Bein v. Brechtel–Jochim Group, Inc.*, 6 Cal. App.4th 1387, 1390 (1992)).

The proof of service initially filed by Mr. Johnson (Dkt. No. 8) was incomplete in that it indicated only that the process server resorted to substituted service, but did not include the process server's declaration of diligence regarding attempts first made at personal service on Champ Patel, SJR's registered agent for service of process (*see* Dkt. No. 12-8 at ECF p. 3). Pursuant to this Court's interim order for supplemental briefing (Dkt. No. 16), Mr. Johnson submitted an "Affidavit of Reasonable Diligence" indicating that the process server attempted to personally serve Mr. Patel four times between November 17, 2017 and November 24, 2017 at a residential address in Stockton, California. Dkt. No. 17 at ECF p. 6. Those attempts were unsuccessful, and the process server subsequently effected substituted service by (1) leaving the complaint, summons, and other documents with "John Doe," identified as Mr. Patel's manager at SJR's business address in Stockton, California and (2) mailing those documents on December 19, 2017 to the address where the documents were left. Dkt. Nos. 8, 17. Although the process server's notes state that the manager maintained that Mr. Patel and SJR were not at that address (Dkt. No. 17 at 6), the records before the Court indicate that service was made at the address for SJR on file with the California Secretary of State (Dkt. No. 12-8). This Court concludes that this constitutes proper service of process on SJR.

### C. *Eitel* Factors

For the reasons to be discussed, the *Eitel* factors weigh in favor of entering default judgment.

### 1. The possibility of prejudice to Mr. Johnson

The first *Eitel* factor requires the Court to consider whether Mr. Johnson would be prejudiced if default judgment is not entered. Unless default judgment is entered, Mr. Johnson will have no other means of recourse against SJR. That is sufficient to satisfy this factor. *See, e.g., Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal., May 18, 2018) (finding that the plaintiff would be prejudiced if default judgment were not entered because she "would have no other means of recourse against Defendants for the damages caused by their conduct.").

### 2. The merits of Mr. Johnson's claims and the sufficiency of the complaint

Pursuant to the second and third *Eitel* factors, this Court concludes that the complaint alleges meritorious substantive claims for relief.

#### a. ADA Title III, 42 U.S.C. § 12181, *et seq*.

Title III of the ADA prohibits discrimination by places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id*. § 12182(b)(2)(A)(iv). "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id*. § 12181(9).

#### i. Mr. Johnson's Article III Standing

Turning first to Mr. Johnson's Article III standing to pursue his ADA claim: To establish Article III standing to bring an ADA claim, Mr. Johnson must demonstrate that he suffered an injury in fact, that the injury is fairly traceable to SJR's challenged conduct, and that the injury can be redressed by a favorable decision. *Ridola*, 2018 WL 2287668 at *5 (citing *Hubbard v. Rite Aid Corp*., 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)). Mr. Johnson's complaint alleges that he is disabled within the meaning of the ADA; that he was denied the goods and services offered by the Inn to its non-disabled guests; and that he personally encountered barriers to full and equal access

at the Inn.  Complaint ¶¶ 1, 18-43.  As discussed above, Mr. Johnson says that he requires a guestroom with two beds, but the Inn has only single-occupancy accessible guestrooms.  Complaint ¶¶ 20-21; Johnson Decl. ¶ 4.  Additionally, Mr. Johnson says that during one visit, he was unable to access a standard double-occupancy room he booked because there was no elevator and no accessible path of travel leading to the upper floors.  Complaint ¶¶ 22-23; Johnson Decl. ¶ 4.  He also had difficulties at the entrance to the Inn because the door handle requires tight grasping to operate, and he says that the Inn's transaction counter is too high for use by persons in wheelchairs.  Complaint ¶¶ 25-30; Johnson Decl. ¶ 4.  The complaint further alleges that SJR failed to maintain the facilities in useable and working condition so as to provide access to disabled persons, and also intentionally failed to remove the specified barriers.  Complaint ¶¶ 43, 49.  Moreover, Mr. Johnson claims that he is deterred from returning to the Inn because of the alleged barriers.  Complaint ¶¶ 36, 47.  *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014) ("Indeed, '[d]emonstrating an intent to return to a non-compliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief.  A disabled individual also suffers a cognizable injury if he is *deterred* from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.") (quoting *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 949 (9th Cir. 2011)).

Mr. Johnson's factual allegations are accepted as true by virtue of SJR's default, and an award of statutory damages and injunctive relief would redress Mr. Johnson's alleged injuries.  Accordingly, this Court finds that Mr. Johnson has Article III standing to sue under the ADA.

### ii.      ADA Claim Elements

To prevail on his Title III discrimination claim, Mr. Johnson must show that (1) he is disabled within the meaning of the ADA; (2) SJR is a private entity that owns, leases, or operates a place of public accommodation; and (3) he was denied public accommodations by SJR because of his disability.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  To succeed on an ADA claim based on architectural barriers, Mr. Johnson "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable."  *Ridola*, 2018 WL 2287668 at *5 (citations omitted).

Deeming true the complaint's well-pled factual allegations, Mr. Johnson has established that he is disabled within the meaning of the ADA. Under the ADA, a physical impairment that substantially affects a major life activity, such as walking, qualifies as a disability. 42 U.S.C. §§ 12102(1)(A), 12102(2)(A). As discussed above, Mr. Johnson says he is a C-5 quadriplegic who uses a wheelchair for mobility. Complaint ¶ 1; Johnson Decl. ¶ 2. Mr. Johnson further alleges that SJR owns the Inn, which is a place of public accommodation. Complaint ¶¶ 3-13; *see* 42 U.S.C. § 12181(7)(A) (listing "an inn, hotel, or other place of lodging" as a "public accommodation"). Mr. Johnson also alleges that during several visits to the Inn, he personally encountered access barriers with respect to sleeping accommodations, as well as with the Inn's entrance door and transaction counter. Complaint ¶¶ 18-34.

Mr. Johnson contends that the alleged barriers violate the ADA Accessibility Guidelines ("ADAAG"), both the current 2010 Standards and the prior 1991 Standards they replaced.[2] The ADAAG, found in the ADA's implementing regulations at 28 C.F.R. Part 36, provide "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d at 945. "Accordingly, a violation of the ADAAG constitutes a barrier under the ADA." *Ridola*, 2018 WL 2287668 at *7.

Mr. Johnson argues that the Inn's failure to offer to two beds in the designated accessible guestrooms violates the 1991 Standards § 9.1.4 and the 2010 Standards § 224.5. Indeed, § 9.1.4 of the 1991 Standards requires that places of lodging have accessible rooms and that "such rooms must be dispersed among the various classes of sleeping accommodations to provide a range of options applicable to room size, costs, amenities, and number of beds." *Ridola*, 2018 WL 2287667 at *7; *see also* 1991 ADAAG, 28 C.F.R. Pt. 36, App. D §§ 9.1.2, 9.1.4. Section 224.5 of the 2010 Standards similarly requires that accessible rooms "be dispersed among the various classes of guest rooms, and shall provide choices of types of guest rooms, number of beds, and other amenities comparable to the choices provided to other guests." 2010 ADAAG, 28 C.F.R. Pt.

---

[2] In his supplemental briefing, Mr. Johnson clarified that the 2010 Standards apply and that he cited both the 1991 Standards and the 2010 Standards in his moving papers to demonstrate that the Inn has not complied with either one in any event. Dkt. No. 17.

Mr. Johnson alleges that the Inn's entrance door is "a pull bar style handle that required tight grasping to operate." Complaint ¶¶ 26-27; Johnson Decl. ¶ 4. He correctly notes that the 1991 Standards and the 2010 Standards provide that door hardware must have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. Section 4.13.9 of the 1991 Standards provides: "Handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate." Section 404.2.7 of the 2010 Standards provides: "Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4." Section 309.4, in turn, requires that "[o]perable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate operable parts shall be 5 pounds (22.2 N) maximum."

Mr. Johnson alleges that the Inn's transaction counter was more than 36 inches high and that there was no lowered, 36-inch portion of the counter for use by persons in wheelchairs. Complaint ¶¶ 29-32; Johnson Decl. ¶ 4. Additionally, in his motion, Mr. Johnson asserts that the approach to the Inn's transaction counter is parallel to the counter. Dkt. No. 12-1 at 5. The 1991 Standards § 7.2(2)(i)-(ii) requires that for "registration counters in hotels and motels . . . either . . . (i) a portion of the main counter which is a minimum of 36 in (915 mm) in length shall be provided with a maximum height of 36 in (915 mm); or (ii) an auxiliary counter with a maximum height of 36 in (915 mm) in close proximity to the main counter shall be provided . . . ." The 2010 Standards § 904.4.1 provides, in relevant part, that for "Parallel Approach" sales and service counters, "[a] portion of the counter surface that is 36 inches (915 mm) long minimum and 36 inches (915 mm) high maximum above the finish floor shall be provided."

As for the "readily achievable" element of his ADA claim, citing *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127 (E.D. Cal. 2007), Mr. Johnson argues that he need not show that barrier removal is readily achievable because SJR bears the burden of pleading and proving, as an affirmative defense, that removal of the barriers in question is not readily achievable. That affirmative defense has been waived, Mr. Johnson argues, because SJR has not appeared in this

matter.

Although the Ninth Circuit has yet to decide who bears the burden of proving that removal of an architectural barrier is readily achievable, *see Johnson v. Altamira Corp.*, No. 16-cv-05335 NC, 2017 WL 1383469, at *3 (N.D. Cal., Mar. 27, 2017), a number of federal courts, including within the Ninth Circuit, follow the burden-shifting framework articulated by the Tenth Circuit in *Colorado Cross Disability v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001). *See Vogel*, 992 F. Supp. 2d at 1010-11; *see also Ridola*, 2018 WL 2287668, at *10. Under the *Colorado Cross* burden-shifting analysis, the plaintiff bears the initial burden of production to show that a suggested method for removing a barrier is readily achievable, and the defendant bears the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable. *See Vogel*, 992 F. Supp. 2d at 1010 (citing *Colorado Cross*, 264 F.3d at 1006). In the historic facilities context, the Ninth Circuit declined to adopt *Colorado Cross*'s burden-shifting framework and instead placed the burden of production squarely upon the defendant as "the party with the best access to information regarding the historical significance of the building." *Molski v. Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043, 1048 (9th Cir. 2008). Although limited to the historic facilities context, *Foley Estates* recognized that Congress relies on private individuals to enforce the ADA and also noted the general principle espoused by the *Colorado Cross*'s dissent: "'[i]f plaintiffs must all but present the court with a pre-approved construction contract for a sum certain which includes detailed plans, impact statements, engineering studies, and permits to meet their threshold burden, virtually no plaintiff could afford to bring an architectural barrier removal claim under 42 U.S.C. § 12182(b)(2)(A)(iv).'" *Id.* at 1048-49 (quoting *Colorado Cross*, 264 F.3d at 1011). "We need not require an ADA plaintiff to undertake such heroic measures." *Id.* at 1049.

Regardless of who bears the burden of proof, *Foley Estates*' general observations, as well as cases applying the *Colorado Cross* burden-shifting framework, suggest that the plaintiff's initial burden, at least in the default judgment context, is not onerous. *See, e.g., Johnson v. Hall*, No. 2:11-cv-2817-GEB-JFM, 2012 WL 1604715, at *3 (E.D. Cal., May 7, 2012) (concluding that the plaintiff met his burden where the complaint's allegation that the barriers "are readily

removable" was deemed true on default and where he sought injunctive relief to remove barriers if it was readily achievable to do so); *Johnson v. Beahm*, No. 2:11-cv-0294-MCE-JFM, 2011 WL 5508893, at *3 (E.D. Cal., Nov. 8, 2011) (same).

Mr. Johnson alleges that the identified barriers are "easily removed without much difficulty or expense" and "are the types of barriers identified by the Department of Justice as presumably readily achievable to remove . . . ." Complaint ¶ 44. Additionally, the complaint alleges that "there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable." *Id.* The complaint goes on to allege that SJR "could, with very little cost, change the door hardware so that it is accessible." *Id.*, ¶ 45. As for the transaction counter, Mr. Johnson alleges that making the counter accessible is a "common barrier removal project" and a "simple architectural and construction task, well within the capabilities of any general contractor, and done for modest price and effort." *Id.*, ¶ 46.

Federal regulations provide a non-exclusive list of steps to remove barriers, including "[i]nstalling accessible door hardware," 28 C.F.R. § 36.304(b)(11), and courts have observed that the listed items are "examples of readily achievable steps to remove barriers . . .." *Altimira Corp.*, 2017 WL 1383469, at *3; *see also Vogel*, 992 F. Supp. 2d at 1011 (concluding that the plaintiff met his initial burden of showing that the barrier removal was readily achievable where he alleged that the defendant had the financial resources to remove the barriers without difficulty, but refused to do so, and where many of the barriers in question were among those listed in 28 C.F.R. § 36.304(b)). Moreover, at the default judgment stage, courts have found allegations similar to Mr. Johnson's allegations sufficient to show that the removal of the barriers at issue is readily achievable. *See, e.g., Ridola*, 2018 WL 2287668 at *11 (concluding that the plaintiff met her initial burden with respect to the defendant motel's sleeping accommodations, as well as other alleged barriers listed in 28 C.F.R. § 36.304(b)); *Altimira*, 2017 WL 1383469, at *3 (concluding that the plaintiff met his burden with respect to the defendant's sales counter and other alleged barriers) (citing *Hall*, 2012 WL 1604715, at *3)).

This Court finds that, in this default proceeding, Mr. Johnson has satisfied his burden that removal of the barriers at issue is readily achievable. Because SJR defaulted and has not defended

this action, it has failed to meet its burden to show that removal of the identified barriers is not readily achievable.

### b. Unruh Act Claim

"Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *MJ Cable, Inc.*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, to the extent Mr. Johnson has an ADA claim based on the Inn's sleeping accommodations, entrance door, and transaction counter, he also has an Unruh Act claim based on those barriers.

### 3. The amount of money at stake

This *Eitel* factor requires the Court to consider the sum of money at stake in relation to the seriousness of a defendant's conduct. *Love v. Griffin*, No. 18-cv-00976-JSC, 2018 WL 4471073, at *5 (N.D. Cal., Aug. 20, 2018). Mr. Johnson seeks only statutory damages under the Unruh Act. While the sums requested are not insignificant, for the reasons discussed more fully below, they are proportional to the conduct alleged.

### 4. The possibility of a dispute concerning material facts and whether SJR's default was due to excusable neglect

Under the fourth and fifth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether SJR's failure to respond was the result of excusable neglect. *Love*, 2018 WL 4471073 at *5; *Ridola*, 2018 WL 2287668 at *13. Because Mr. Johnson pleads plausible claims for violations of the ADA and the Unruh Act, and as all liability-related allegations are deemed true, there is nothing before the Court that indicates a possibility of a dispute as to material facts. Moreover, there is no indication that SJR's default was due to excusable neglect. As discussed, the record demonstrates that Mr. Johnson served SJR with notice of this lawsuit, as well as with copies of his initial request for the entry of SJR's default and the present motion for default judgment. SJR has never appeared or responded, suggesting that it has chosen not to present a defense in this matter. These factors weigh in favor of default judgment.

### 5. The strong policy favoring decisions on the merits

While the Court prefers to decide matters on the merits, SJR's failure to participate in this litigation makes that impossible. *See Ridola*, 2018 2287668 at *13 ("Although federal policy

favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate."). Default judgment therefore is Mr. Johnson's only recourse. *See United States v. Roof Guard Roofing Co, Inc.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal., Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

### D. Requested Relief

Because this Court concludes that default judgment is warranted, it now considers Mr. Johnson's request for injunctive relief, as well as statutory damages under the Unruh Act, and attorney's fees and costs.

#### 1. Injunctive Relief

Aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *MJ Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive relief is also available under the Unruh Act. *See* Cal. Civ. Code § 52.1(h). "A plaintiff need not satisfy '[t]he standard requirements for equitable relief . . . when an injunction is sought to prevent the violation of a federal statute [that] specifically provides for injunctive relief.'" *Love*, 2018 WL 4471073 at *6 (quoting *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011)). Thus, injunctive relief is proper under the ADA where the plaintiff establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668 at *13 (citing *Moreno v. La Curacao*, 463 Fed. Apps. 669, 670 (9th Cir. 2011)). For the reasons discussed above, Mr. Johnson has done so here. Accordingly, this Court recommends that his request for injunctive relief be granted.

#### 2. Statutory Damages

"Monetary damages are not available in private suits under Title III of the ADA. *MJ Cable, Inc.*, 481 F.3d at 730 (citing *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir.2002)). However, the Unruh Act provides a minimum statutory damages award of $4,000 "for each occasion an individual is denied equal access to an establishment covered by the Unruh Act . . .." *Ridola*, 2018

13

WL 2287668 at *15 (citing Cal. Civ. Code § 52(a)). Mr. Johnson "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *MJ Cable, Inc.*, 481 F.3d at 731. He requests damages of $12,000, i.e., $4,000 for each of the three alleged barriers he encountered. This Court finds that Mr. Johnson has established his entitlement to an award of $12,000 in statutory damages.

### 3. Attorney's Fees and Costs

Mr. Johnson requests $4,080.00 in attorney's fees and costs.

The ADA gives courts the discretion to award attorney's fees, including litigation expenses and costs, to prevailing parties. *MJ Cable, Inc.*, 481 F.3d at 730 (citing 42 U.S.C. § 12205). Additionally, the Unruh Act provides that "[i]n addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to [Cal. Civ. Code § 52.1(b)], the court may award the petitioner or plaintiff reasonable attorney's fees." Cal. Civ. Code § 52.1(h).

Whether calculating attorney's fees under California or federal law, courts follow the lodestar approach. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), abrogated on other grounds by *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.*

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The fee applicant has the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Blum*, 465 U.S. at 896 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, plaintiff's counsel, Mr. Dennis Price, cites several decisions from the Central District of California to support the reasonableness of his $300 hourly rate. Dkt. Nos. 12-9, 12-10, 12-11, 12-12, 12-13. The relevant forum, however, is the Northern District of California. *Barjon*, 132 F.3d at 500. Accordingly, the cited decisions approving what may be considered reasonable rates in the Central District are irrelevant.[3] Nevertheless, the Court may rely on its own knowledge and experience in evaluating a request for fees. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir.2011) (agreeing that "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees."); *Minichino v. First California Realty*, No. C-11-5185 EMC, 2012 WL 6554401 at *7 (N.D. Cal., Dec. 14, 2012) (relying on the court's own experience in evaluating a fee request).

Here, Mr. Price's rate of $300 per hour appears to be reasonable, in view of the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. Mr. Price avers that he graduated from Loyola Law School and has been practicing for six years, primarily in disability access matters. Price Decl. ¶ 6. Although he does not itemize the time he spent on each task, he does specify the total time he spent (12.2 hours) and what he did:

> I have done the following: (1) discussed the case with the client and developed the intake notes; (2) conducted a preliminary site inspection of the real property to comply with my Rule 11 obligations; (3) conducted research of public records to determine the identities of the business owner and owner of the real property; (4) reviewed and executed the Request for Entry of Default; (5) and drafted this application for default judgment and my supporting declaration. I spent a total of 12.2 hours of time, which totals $3,660.00 in attorney fees, and paid out $420.00 in filing fees and service costs, for a total of $4,080.00 in attorney fees and costs.

*Id.* ¶ 5. Decisions issued by other courts in this district support the reasonableness of Mr. Price's

---

[3] Mr. Johnson's motion papers also mention a "local fee schedule" (Dkt. No. 12-1 at ECF p. 14) that may be a reference to the Central District of California's Civil Local Rule 55-3 governing "Default Judgment—Schedule of Attorneys' Fees." There is no equivalent in the Northern District of California's Civil Local Rules. *Love*, 2018 WL 4471073 at *7, n.4.

hourly rate. For example, in *Ridola*, the Court approved a slightly higher $325 hourly rate for one of the plaintiff's attorneys, who had twelve years of experience as a California attorney, with six of those years focused on disability access law. *Ridola*, 2018 WL 2287668 at *16; Case No. 5:16-cv-02246-BLF, Dkt. No. 58-8, Declaration of Irene Karbelashvili ¶¶ 3, 6. More recently, another court in this district approved an award of fees, including fees incurred by Mr. Price at a slightly higher rate than the one at issue in the present matter. *See Arroyo v. Aldabashi*, No. 16-cv-06181-JCS, 2018 WL 4961637, at *2, *5 (N.D. Cal., Oct. 15, 2018) (concluding that a $350 hourly rate for Mr. Price is reasonable). This Court also finds the 12.2 hours incurred are reasonable, given the nature of the tasks Mr. Price says he performed within that time.

Moreover, Mr. Johnson has substantiated his request for $420 in filing fees and service costs. *See* Docket entry text for Dkt. No. 1 (confirming receipt number and payment of the $400 filing fee); Dkt. No. 17 at ECF p. 4 (process server's invoice for services).[4]

Accordingly, this Court recommends that Mr. Johnson be awarded $3,660 in attorney's fees and $420 in costs, for a total award of $4,080 in fees and costs.

## IV. CONCLUSION

Because not all parties have consented to the undersigned's jurisdiction, IT IS ORDERED THAT this case be reassigned to a district judge. For the reasons discussed above, it is RECOMMENDED that:

    1.    Mr. Johnson's motion for default judgment be granted.

    2.    Mr. Johnson be awarded statutory damages in the amount of $12,000.

    3.    Mr. Johnson be awarded $4,080 in attorney's fees and costs.

    4.    Mr. Johnson be granted an injunction requiring SJR to provide accessible sleeping accommodations and to remove the identified barriers regarding the entrance door and transaction counter in compliance with the ADAAG.

---

[4] Although the invoice states that the process server charged $40 for his services, Mr. Price's declaration indicates that Mr. Johnson requests payment of $20 for service costs. *See* Price Decl. ¶ 5 (averring that counsel "paid out $420 in filing fees and service costs"). This Court credits the sums identified and requested in Mr. Price's declaration, rather than the amount reflected in the process server's invoice.

Mr. Johnson shall promptly serve SJR with this Report and Recommendation and file a proof of service with the Court. Any party may serve and file objections to this Report and Recommendation within 14 days after being served. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civ. L.R. 72-3.

Dated:   October 29, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge